786 So.2d 781 (2001)
STATE of Louisiana,
v.
James C. EVANS.
No. 00-KA-1766.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*782 Paul D, Connick, Jr., District Attorney, 24th Judicial District Court, Thomas J. Butler, Terry M. Boudreaux, Joan Benge, Assistant District Attorneys, David P. Wolff, Appellate Counsel, Gretna, LA, Counsel for State.
Martin E. Regan, Jr., New Orleans, LA, Counsel for defendant-appellant.
Court composed of Judges DUFRESNE, GOTHARD and McMANUS.
McMANUS, Judge.
The Defendant appeals his conviction for aggravated battery, arguing that the evidence was insufficient to support such a conviction. For the reasons that follow, the conviction and the sentence are affirmed.

STATEMENT OF THE CASE
Defendant, James C. Evans was charged with aggravated battery, a violation of LSA-R.S. 14:34. Defendant pled not guilty, and on December 13, 1999, the case was tried before the trial judge. On December 15, 1999, Defendant was found guilty as charged. Defendant was sentenced to imprisonment at hard labor for five years, with the sentence suspended, and he was placed on active probation for five years. Defendant filed a motion for appeal on May 30, 2000, which was granted.

FACTS
Warren Evans is the Defendant's brother and the victim in this case. Warren Evans testified for the State that on February 22, 1999, at approximately 12:00 p.m., he entered his home at 3110 Lausat Street in Metairie. As Evans was cooking a hamburger in the kitchen, the Defendant walked in and accused Evans of telling their sister that Defendant had put a dirty towel in the washing machine with her baby's clothing. Evans told Defendant he did not say that, and Defendant "attacked" him and then started to go out the door. Evans told Defendant not to threaten him with a gun again, and Defendant said, "I'm not going to threaten you this time." Defendant walked out of the door, down the side of the house and around the front of the house to his truck to get a .357 magnum revolver. According to Evans, Defendant came back into the house and shot him in the knee. Evans fell to the ground, and about that time co-defendant Kervin Abbot entered the room. Defendant told Abbott to keep Evans off the phone. Evans testified that Abbott walked over to Evans and said, "You know, I ought to stomp that leg," and then he stomped on Evans' leg three times. Evans got to his feet, pushed his way past Abbott and called 911. The 911 audio tape was played in court. Evans identified Defendant and Abbott in court as the individuals who shot him and stomped on his leg, respectively. At the time of the incident, Kervin Abbott and the Defendant both resided with Evans at 3110 Lausat Street.
Deputy Evan J. Ulmer of the Jefferson Parish Sheriffs Office testified for the State that on February 22, 1999, he responded to an aggravated battery at 3110 Lausat Street. When Deputy Ulmer first arrived, he observed the victim laying in the front yard with a gunshot wound to the leg. Deputy Ulmer arrested Defendant, James Evans, and charged him with aggravated battery, and he also arrested Kervin Abbott and charged him with simple battery.
Kervin Abbott testified for the defense that the night before the incident, Warren Evans had started an argument with almost everyone in the house. He also stated *783 that it appeared to him Warren Evans was "loaded" and had used crack cocaine. On the day of the incident, Abbott was sitting in the game room in the house, and he heard Warren and James Evans arguing. After a few words were exchanged the Defendant, James Evans, left the house. About five minutes later, Abbott saw James Evans return and they soon started arguing again. Abbott stated that Warren Evans had a kitchen knife in his hand already, which he had been using to cut his sandwich. Warren Evans walked over to defendant with the knife, and defendant James Evans raised a baseball bat up and said, "get back, Warren, I ain't going to let you stab me." After that, Defendant set the baseball bat down and said, "all right Warren, I'm going to my room, just leave me alone." Warren Evans picked his hand up with the knife in it and drew back, and defendant said, "get back, Warren, I've got a gun. I'm not going to let you stab me." Abbott then heard a pop. Defendant was standing at the door, and he said, "I told the damn fool to get back."
Abbott testified that he went into the room to pick up Warren Evans, but Warren started kicking at him. When Warren kicked Abbott's foot, Abbott lost his balance and his foot came down on Warren's uninjured leg. Abbott stated that he did not stomp on Warren's leg.

ASSIGNMENT OF ERROR NUMBER ONE
As his sole assignment of error on appeal, Defendant contends that the evidence was legally insufficient to prove that he committed an aggravated battery upon Warren Evans. He claims that the evidence showed by more than a preponderance that the shooting was justified.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979). In Jackson, the Court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984).
In the instant case, Defendant was convicted of aggravated battery, a violation of LSA-R.S. 14:64. To support a conviction of aggravated battery, the state has the burden of proving three elements: 1) that the Defendant intentionally used force or violence against the victim; 2) that the force or violence was inflicted with a dangerous weapon; and 3) that the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097.
Defendant argues that the aggravated battery was justified and, therefore, the trial court should not have found him guilty according to LSA-R.S. 14:19, which provides as follows:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary *784 to prevent such offense, and that this article shall not apply where the force or violence results in homicide.
In State v. Freeman, 427 So.2d 1161, 1163 (La.1983), the Louisiana Supreme Court indicated, in dicta, that the defendant in a non-homicide case may have the burden of proving self-defense by a preponderance of the evidence. The Freeman Court stated that "in the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary." Freeman, 427 So.2d at 1163
In the instant case, the state and the defense presented two different versions of the facts. Warren Evans testified for the State that he had an argument in his home with Defendant, who then armed himself with a gun and shot Evans in the knee. Abbott testified for the defense that Warren Evans had started an argument with everyone in the house the night before the incident, and on the day of the incident Evans was "loaded." Abbott stated that Warren Evans walked over to Defendant with a kitchen knife in his hand and drew it back. Abbott claimed that after Defendant shot Evans, Evans kicked Abbott, which caused Abbott's foot to hit Evans' leg.
Following the trial, the judge found codefendant, Abbott, not guilty of simple battery, and Defendant, James Evans, guilty of aggravated battery. The judge gave the following reasons for judgment:
This was not a situation where there should have been a shooting. This was a lot of foolishness over a dirty towel and some hamburgers or whatever, not a situation that's supposed to lead to a shooting. But what we have is is [sic] that he was shot. After the shooting James Evans, from all the testimony which appears to be uncontradicted, doesn't call the police, doesn't seek attention, doesn't try to help his brother and changes his clothes. I find those to be activities of someone who has done something wrong, someone who is trying to conceal perhaps their act, someone who maybe is attempting to flee orI can't find out why he would be changing his clothes except to avoid detection and fleeing. I find that the State has reached its burden where James Evans is concerned and, therefore, I find him guilty of aggravated battery....
The trial judge relied on Defendant's activities after the crime in order to support his finding that Defendant was guilty of committing the crime. Courts have relied on events after a crime to find that a defendant had the specific intent to commit the crime. In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 85, the Louisiana Supreme Court found that defendant's untruthful statement to the police following the crime supported a "guilty mind," and, although that was not enough in and of itself to convict defendant, the Supreme Court found that defendant's dishonesty was admissible to show intent.
The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. After hearing the testimony and evaluating the credibility of the witnesses, the trial judge found the Defendant guilty of aggravated battery. For all of the above reasons, we find that the evidence at trial was sufficient under the Jackson standard to support the Defendant's conviction.

*785 ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The transcript indicates that the trial judge did not inform defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8, despite the commitment which states otherwise. The transcript controls in this situation. State v. Lynch, 441 So.2d 732, 734 (La.1983). LSA-C.Cr.P. art. 930.8 provides that a court shall not consider an application for post-conviction relief, including applications which seek an out-of-time appeal, if the application is filed more than two years after the judgment of the conviction and sentence has become final. Therefore, we remand so that the trial court may advise the Defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of its opinion and to file written proof that Defendant received the notice in the record of the proceedings. State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.

CONCLUSION
The Defendant's conviction and sentence are affirmed. This case is remanded to the trial court to comply with the provisions of LSA-C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED TO CORRECT ERRORS PATENT.