| gGOTHARD, Judge.
Defendant, Issac J. Fields, Jr., appeals his conviction on one count of attempted forgery and his resulting sentence. For reasons that follow, we affirm.
The record shows that on April 12, 1999, the Jefferson Parish District Attorney filed a bill of information charging defendant with two counts of forgery in violation of LSA-R.S. 14:72. The first count alleged defendant forged a check, and the second count alleged defendant issued and transferred the forged check.
On May 6, 1999, defendant was arraigned and pled not guilty.⅞ Defendant waived trial by jury on September 27, 2000, and was tried by the bench. At the conclusion of trial, the court found defendant not guilty on count one, and guilty of attempted forgery on count two. Defendant waived |ssentencing delays and was sentenced to imprisonment at hard labor for *1280 two years, suspended. The court placed defendant on active probation for two years.[1] Defendant filed a timely motion for appeal which was granted.

FACTS

Thomas Henderson, who was called as a witness by the State, testified that he was employed at Mobile One Auto Center as a salesman. Henderson first met defendant on January 15, 1998, when defendant purchased some equipment and had it installed into his vehicle, a Chevy Tahoe. Defendant’s name, address and telephone number were entered into the computer as a result of that transaction. On Saturday, July 11, 1998 at approximately 12:30 or 1:00 p.m., defendant came into the store again to have some equipment replaced in his truck which he said had been stolen. After Henderson and defendant chose the equipment, defendant said he would be back later with his girlfriend to pick up the equipment, and that his girlfriend would pay for the equipment at that time. Henderson gave defendant an estimate of the total cost, and defendant asked if the store accepted personal checks as payment. After Henderson answered affirmatively, defendant told Henderson he would be back later.
|4When defendant came back that day at 5:00 or 5:30 p.m., he was alone. Henderson went up to defendant and said, “Are you ready for it?” and defendant said, “No, she’ll be here in a few minutes, she’s right behind me.” Defendant did not tell Henderson the woman’s name.
About five or ten minutes later, Henderson saw the woman enter the store, and then saw the defendant and the woman talking. Defendant walked over to Henderson, pointed to an African American woman with long black hair, and told Henderson that “she was here.” Henderson walked over to the terminal and rang up the invoice for the equipment, a box for sub-woofers, two amplifiers and a warranty. The woman stood next to him the entire time, and defendant stood about five to ten feet behind Henderson. Henderson told the woman the total was $1,109.04, and she wrote out a check for that amount and handed it to him. The name on the check was Anne Buckwalter. Henderson asked the woman for her I.D., and the woman gave him a Louisiana I.D. He ran the check through Equifax Check Systems, and it came back approved. Henderson picked up the receipt behind the customer service counter, went into the stock room, got the equipment and brought the receipt and the equipment over to defendant and the woman. The woman signed the receipt which indicated that she received the goods, and defendant carried the equipment out of the store. Defendant and the woman walked out of the store together.
Defendant came back into the store on July 14th, with the equipment purchased on July 11th. At that time defendant bought additional equipment, and had the new equipment and the equipment purchased on July 11th installed in his vehicle. Henderson wasn’t working on July 14th, so [ .^another salesman, Jay Robkin, helped defendant on that day. Defendant came back into the store again on July 15th, because he wasn’t satisfied with the way *1281 the system was sounding, so he exchanged the first box which held three sub-woofer speakers in it and bought a box that held four instead. Henderson and Robkin both helped defendant on that day. Defendant paid $140.00 cash for the new box and for the installation of the equipment and waited while the new equipment was installed. Henderson testified that it was not necessary to pull up the July 11th invoice in order to arrange the installation. After they put in the new box, defendant was satisfied and left.
Anne Buckwalter, who was called as a witness by the State, testified that, on July 11, 1998 at approximately 1:00 p.m., she was the victim of an armed robbery. Her purse and everything in it, including her wallet, driver’s license, credit cards, checkbook and keys to her vehicle were stolen. The perpetrator was a black male in his late twenties or early thirties. She stated that she didn’t get a good look at his face because he was wearing a bandana. Buck-waiter testified that she did not know defendant and was not with him at any time between 4:30 and 6:30 p.m. on July 11, 1998. She stated that she did not give defendant or any friend of defendant’s permission to use her checks. One of her checks was used at Mobile One without her permission, and she signed an affidavit of forgery regarding that check which was in the amount of $1,109.04.
Nelson Murphy, who was called as a witness by the State, testified that he installed a custom box and woofers in defendant’s car on July 14th. He stated that the work order of July 14th, which was not introduced at trial, |ficontained the invoice number of the original purchase. Murphy testified that it was not his job to pull up or examine invoices.
The State and defendant stipulated that Don Lancereaux, the Loss Prevention Manager at Mobile One, was unable to testify. However, if he had testified, he would have stated that Mobile One experienced a loss of $1,109.04, a,nd that payment for that check was made by Equifax as the entity that confirmed the check was good on the day of the sale. The State and defendant also stipulated that when defense counsel and defendant learned that the check tendered as payment for the equipment was forged, defense counsel tendered to Mobile One full payment for the purchase in question on behalf of defendant, and that Mobile One had in its possession that check.
Defendant did not call any witnesses.

ANALYSIS

In brief to this court, defendant assigns one error. He asserts that the evidence presented against him by the prosecution was insufficient to support the conviction of attempted forgery, and to exclude every reasonable hypothesis of innocence. He contends that the woman who forged the check at Mobile One did so without his knowledge, and that there was nothing in the transaction itself that put him on notice that the woman was signing a stolen document, forging a signature, using an assumed name or presenting false identification. He contends that the State failed to prove he had the specific intent to commit forgery. Defendant claims that Mobile One had his name, address and telephone number in their computer, and that someone knowingly participating in a planned fraudulent consumer action would not |7do so at a store where he was known and identifiable. He contends that the State’s case is inconsistent because he returned to Mobile One on two occasions after the forgery, and that a person who knew his girlfriend had forged a check would not go back to that same location twice after the fraudulent purchase had occurred. Defendant also argues that his failure to testify or to identify the woman *1282 who forged the check cannot be used against him. Further, once defendant was made aware of the forgery, he tendered payment for the equipment through his counsel.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the court held that due process requires the reviewing court to determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Bullard, 29,662 (La.App. 2 Cir. 9/24/97), 700 So.2d 1051. This is not a separate test from that stated in Jackson, supra, but |srather provides a helpful basis for determining the existence of reasonable doubt. State v. Jones, 00-980 (La.App. 5 Cir. 10/19/00), 772 So.2d 788, 791. Ultimately, evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In the instant case, defendant was convicted of attempted forgery. Attempted forgery is a separate, but lesser included grade of the intended crime, and is a responsive verdict authorized by LSA C.Cr.P. Article 815 and R.S. 14:27C. State v. Spooner, 550 So.2d 1289 (La.App. 1 Cir.1989). A defendant may be convicted of an attempt to commit a crime, although it appears at the trial that the crime intended was actually perpetrated by the defendant. Id.
In State In Interest of A.G., 630 So.2d 909, 911 (La.App. 4 Cir.1993), our.brethren on the Fourth Circuit stated:
Specific intent to commit a crime is an element of an attempted offense. To convict for an attempted offense, there must be sufficient proof that the offender actually desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and action of the accused. (Citations omitted)
The forgery statute, LSA R.S. 14:72, defines two types of acts which constitute a violation of the statute as follows:
Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
| cjssuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
An essential ingredient to the crime of forgery is the specific intent to defraud. State v. Sumling, 00-1641 (La. *1283 App. 5 Cir. 4/24/01), 786 So.2d 843 (and the citations therein). Specific intent may be inferred from the circumstances and actions of the defendant. Id.
Attempt is defined in LSA-R.S. 14:27 as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to'commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
LSA-R.S. 14:24 provides that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals.
Defendant argues that the prosecution did not show knowledge and intent on the part of defendant. Defendant further argues that his failure to identify the woman who purchased the equipment for him with a forged check can be given no evidentiary weight.
| inIt is clear from the trial transcript that the trial judge recognized defendant’s Fifth Amendment right to remain silent, and the State’s burden of proving the defendant guilty. The trial judge also explained that he found from the testimony that the defendant had knowledge of the forgery, and the sufficient intent to defraud necessary to find him guilty of attempted forgery. In so doing, the judge found the circumstances excluded every reasonable hypothesis of innocence, including the defense theory of the case, that defendant did not know that his girlfriend was purchasing the equipment for him with a forged check.
Given the circumstances presented in this case, we cannot find error in the determination of the trial judge that the evidence shows that defendant and his girlfriend together planned to, and did, defraud Mobile One for the purpose of obtaining stereo equipment without paying for it. Based on the foregoing, we find that the evidence was legally sufficient under Jackson to support defendant’s conviction of forgery pursuant to the law of principals, and thus the lesser included offense of attempted forgery. Accordingly, we find no merit in this assignment.
This court has conducted a review of the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). That review reveals that the trial judge did not inform defendant of the prescriptive period for post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8 despite the commitment which states otherwise. The transcript controls. State v. Lynch, 441 So.2d 732, 734 (La.1983). LSA-C.Cr.P. art. 930.8 provides that a court shall not *1284 consider an application for post-conviction Inrelief, including applications which seek an out-of-time appeal, if the application is filed more than two years after the judgment of the conviction and sentence has become final. Therefore, we remand the matter to the trial court with instructions to advise defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion, and to file written proof that defendant received the notice in the record of the proceedings. State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.
AFFIRMED AND REMANDED WITH ORDER.

. In addition to all general conditions of probation, the following special conditions of probation were imposed:
1) Defendant must pay a fine in the amount of $500.00 and all court costs.
2) Defendant must pay a commissioner fee of $100.00 within 30 days.
3) Defendant must pay $50.00 per month probation supervision fee.
4) Defendant must pay restitution in the amount of $1,109.04, payments to be set up by probation.